UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

v.                                                                  Case No.        4:20-cr-00040

KAREEM BROWN,

        Defendant.

### DEFENDANT KAREEM BROWN'S OBJECTION TO PRE-SENTENCE REPORT, MOTION FOR VARIANCE, AND POSITION REGARDING SENTENCING

COMES NOW the Defendant, KAREEM BROWN, by counsel, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the *Sentencing Guidelines and Policy Statements* and the Court's Sentencing Guideline Order, and hereby represents that the Defendant has reviewed the Probation Office's Pre-Sentence Report and sets forth the following as his objections to the Pre-Sentence report, Defendant's Motion for Variance, and Sentencing Pleading.

### INTRODUCTION AND BACKGROUND

In Case 4:17-CR-113, Kareem Brown ("Mr. Brown") pled guilty to Conspiracy to Possess with Intent to Distribute Heroin. Case 4:17-cr-00113, ECF Doc. 37.  The conspiracy was alleged to have occurred between 2016 and 2017. Case 4:17-cr-00113, ECF Doc. 13.  The Pre-Sentence Report imposed a two level increase for possession of a firearm pursuant to §2D1.1(b)(1). 4:17-cr-00113, ECF Doc. 90, p. 11.  The date of Mr. Brown's earliest relevant conduct was 2014 with specific reference to possession of firearms beginning that year. 4:17-cr-00113, ECF Doc. 90, p. 7, 11.  Probation calculated Mr. Brown's total offense level to be 27 with custody guideline provisions to be between 87 and 108 months.  4:17-cr-00113, ECF Doc.

90, p. 29.  Mr. Brown was ultimately sentenced to 102 months.  4:17-cr-00113, ECF Doc. 67, p. 2.  He has been in federal custody since October 19, 2017.

While serving his sentence for the aforementioned case, Mr. Brown was indicted for the instant matter.  He was charged with Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Cocaine, Cocaine Base, MDMA, Oxycodone and Marijuana in Count One.  The time frame of that conspiracy is alleged to have been between 2013 and 2017 which overlapped the conspiracy to which Mr. Brown previously pled.  He was further charged with one count of distribution of heroin and cocaine between August 2015 and 2016 (Count Four) and one count of distribution of heroin on August 15, 2015 (Count Five).  Additionally, he was charged with possessing a firearm in furtherance of distributing heroin between August 2015 and May 2016 (Count Six), and August 2015 and October 2015 (Count Seven).

Mr. Brown filed a Motion to Dismiss multiple counts based upon a belief that he previously pled guilty to these offenses as part of Case 4:17-cr-00113, and that the plea agreement foreclosed any possibility of being prosecuted.  On February 19, 2021, the Court held a hearing on the Motion and ordered that Mr. Brown and the government submit supplemental briefing in support of their respective positions.  Case 4:20-cr-00040, ECF Doc. 170.

After negotiations, Mr. Brown pled guilty to the 924(c) charge contained in Count Seven.  Case 4:20-cr-00040, ECF Doc. 200.  The plea agreement specifically states that the sentence shall be five years and that said sentence shall be considered to have begun running on July 8, 2020.  Case 4:20-cr-00040, ECF Doc. 200, p. 3. The Pre-Sentence Report was drafted and made two findings to which Mr. Brown has objected.

First, the Pre-Sentence Report finds that there is an association between Mr. Brown and the Blood Hound Brims gang.  Mr. Brown has not had any affiliation with this gang or any other

gangs for many years.  Being labeled as a gang member to the Bureau of Prisons may cause Mr. Brown to be ineligible for certain rehabilitative programs.  Given his lack of association and the lack of evidence regarding same, he respectfully requests that any reference to his gang affiliation be stricken.

Second, Mr. Brown objects to the finding that the provisions of USSG 5G1.3 necessarily require that the sentence in this case run consecutively to the sentence he is serving for Case 4:17-CR-113.  Subsection (a) does not apply because the offense for this case was not committed while Mr. Brown was incarcerated, and thus the analysis moves to Subsection (b).  That subsection states that if a term of imprisonment resulted from another offense that is relevant conduct, the Court shall take two steps.  First, the Court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the Court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons.  Second, the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.  Subsection (d) further states that the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.  The commentary makes it clear that the Court is free to exercise its discretion significantly regarding the structure of the sentence.  See USSG 5G1.3 Commentary Application Notes  4(d), 4(e).

Applying the aforementioned guidelines becomes problematic because the charge to which Mr. Brown pled specifically states that no term of imprisonment imposed shall run concurrently with any other term of imprisonment imposed.  Courts have held that that this language is broad enough to include sentences issued in state court for related conduct but such a

finding is not truly applicable to Mr. Brown's situation. His case is unique based upon the history and timing. Undersigned counsel was not able to locate any case where 1) a defendant is convicted of conspiracy; 2) he receives a firearm enhancement and two level increase; 3) is indicted for a second conspiracy while serving a sentence for the first conspiracy; 4) there is overlap between the dates and subject matter of the two conspiracies; and 5) Defendant pleads guilty to solely a 924(c) count attached to the second conspiracy when there are no other charges associated with it.

When analyzing Mr. Brown's guidelines from the first case, his level was increased to 27 from 25 as a result of the firearm enhancement. The top end of his guideline range increased 21 months as a result of the enhancement. Assuming that he would have received a similar high end guideline sentence had the dangerous weapon enhancement not applied, Mr. Brown received at the very least an additional 15 months of incarceration. If the current charge is not adjusted, he will be serving an additional 75 months instead of 60 due solely to the weapon possession.

In order to achieve the goal of imposing a reasonable and fair punishment, Mr. Brown respectfully requests that the sentence be adjusted so that his active incarceration is 45 months instead of 60 months.

## SECTION 3553 FACTORS

"It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81,113 (1996). While the United States Sentencing Guidelines are advisory, the Court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant as well as the specific facts regarding his or her

conduct. It is undisputed that the Court must consider the guideline range; however, that range is not the only consideration and should be taken into account as only one of several factors. Kimbrough v. United States, 128 S. Ct. 558, 564 (2007).

A court is to impose a sentence sufficient, but not greater than necessary to punish the offense of which a defendant is guilty. 18 U.S.C. §3553 directs that the following factors be considered and taken into account when determining a sufficient sentence:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;

(5) any pertinent policy statement;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

It is important to note that there is no presumption that a range set forth by the Sentencing Guidelines is reasonable and accordingly the sentencing court must individually assess each case based upon the facts before it. Gall v. United States, 128 S. Ct. 586, 597 (2007). When taking these factors into account, a judge may determine that a sentence within the guidelines is greater than necessary to serve the objectives of sentencing. Kimbrough, 128 S. Ct. at 564.

### Nature and Circumstances of the Offense

On March 31, 2021, Mr. Brown pled guilty to Count Seven of a nine-count indictment which charged him with Possession of Firearm During Drug Trafficking. He pled guilty while incarcerated for a previous federal indictment and accordingly has been in federal custody since October 19, 2017.

### History and Characteristics

Originally from Brooklyn, New York, Mr. Brown had an exceptionally difficult, traumatic, and unstable upbringing. He never knew his father and cannot even provide his identity. Mr. Brown was placed into foster care when he was approximately 8 years old. When he was 11 years old, his mother was incarcerated for a few years due to criminal and immigration matters. After being in foster care for a few years, he and his other two siblings were adopted by his grandmother.

Although his grandmother clearly meant well and in all likelihood provided a better environment than foster care, Mr. Brown was devoid of supervision and mentoring in his teenage years. As a result, he began making bad choices such as partaking in marijuana and other drugs. Without the necessary discipline and direction, he continued to make exceptionally poor decisions which led to him being incarcerated in Rikers Island. While Mr. Brown was housed in that notorious facility, he was forced to join the Blood Hound Brims Gang for protection as he

had been viciously attacked by another inmate with a scalpel. It is important to note that he is no longer a member of a gang and does not associate with any gang members.

It is important to look beyond Mr. Brown's criminal record to determine what kind of person he is. He has two sons and by all accounts appears to have been an active and caring father prior to incarceration. Further, Mr. Brown served as the primary caregiver for a girlfriend of his, Gwendolyn Waller. Ms. Waller was sadly paralyzed from the chest down. He assisted her with daily activities including bathing, getting dressed, and using the restroom. Mr. Brown's grandmother also reports that she could rely upon him to perform chores such as shoveling snow from the driveway or cleaning the house. He clearly has a kind heart.

### The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

Possessing a firearm in furtherance of drug activity is a serious offense. The statutory time frame adjusted for Mr. Brown's prior firearm enhancement is sufficient to reflect the offense's seriousness, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct.

### The Need to Provide Mr. Brown with Needed Educational and Vocational Training, as well as Appropriate Medical Care

Mr. Brown dropped out of high school in the 10th grade. Although he was diagnosed with a learning disability at a young age, this has not held Mr. Brown back from attempting to educate himself as he has become an avid reader. He has also attempted to better himself while in BOP custody by enrolling in a general education development program as well as completing five educational and vocational courses. These courses include subjects such as real estate, commercial driver's license, general business, and HVAC. Mr. Brown has also expressed interest in completing a culinary arts program. These programs will hopefully assist Mr. Brown

in moving forward with a career upon his release as prior to incarceration, he generally worked in low-paying manual labor or entry level positions.

Mr. Brown appears to be in relatively good physical health. There are some mental health issues though which might bear further exploring. As a child, he was diagnosed with ADHD and responded well to the medication that was prescribed. It is unclear whether Mr. Brown is still affected by that condition. He has also reported multiple bouts of depression but it appears that any significant episodes or medical treatment occurred most recently roughly a decade ago. Mr. Brown reports that he would be open to utilizing counseling services if needed, but that his participation in religious services has benefitted him significantly. Although it appears that Mr. Brown is not acutely in need of mental health care, the BOP will have resources available for him should he need them. While in custody, he has completed the non-residential drug program.

## The Sentencing Range Established for the Offense and the Need to Avoid Unwarranted Sentencing Disparities

As indicated previously, undersigned counsel was unable to find other cases in this circuit which matched Mr. Brown's fact pattern. Accordingly, it is believed that the need to avoid any unwarranted sentencing disparities is likely not applicable in this case.

## Conclusion

For the reasons set forth above, it is respectfully requested that this Honorable Court impose a sentence which ensures that Mr. Brown is punished adequately for the charge to which he pled by allowing a portion of his sentence to run concurrently to the conviction he received in Case 4:17-CR-113, and that if necessary a variance is effectuated to accomplish that goal based upon the need for the sentence to be just.

Respectfully Submitted,

_____/s/_____
Gregory William Klein, Esquire

Gregory William Klein, Esquire
Virginia State Bar No.: 73110
Klein, Rowell & Shall, PLLC
3500 Virginia Beach Blvd., Ste. 110
Virginia Beach, VA 23452
Voice:  (757) 432-2500
Fax:    (757) 432-2100
greg@krslaw.com
Counsel for Defendant Kareem Brown

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of August, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send electronic notification of such filing (NEF) to all counsel of record.  I further certify that I will email the following non-user a copy of the foregoing:

Sami Geurts
United States Probation Officer
Eastern District of Virginia, Richmond Division
701 East Broad Street, Suite 1150
Richmond, VA 23219
Phone: (804) 915-9043
Cell: (757) 373-1157
Fax: (804) 916-2550
sami_geurts@vaep.uscourts.gov

_____/s/_____
Gregory William Klein, Esquire

Gregory William Klein, Esquire
Virginia State Bar No.: 73110
Klein, Rowell & Shall, PLLC
3500 Virginia Beach Blvd., Ste. 110
Virginia Beach, VA 23452
Voice:  (757) 432-2500
Fax:    (757) 432-2100
greg@krslaw.com
Counsel for Defendant Kareem Brown