IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Newport News Division

UNITED STATES OF AMERICA,

      v.                                                         Criminal No. 4:20cr40-2 (DJN)

KAREEM BROWN,
        Petitioner.

**MEMORANDUM OPINION**

Kareem Brown ("Brown"), a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside or correct his federal conviction and sentence. ("§ 2255 Motion," ECF No. 316).[1] With the Court's leave, (*see* ECF No. 357), Brown amended his § 2255 Motion with two subsequent filings (ECF Nos. 332, 335). For the reasons set forth below, the § 2255 Motion, as amended, will be denied, and a certificate of appealability will be denied.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    **A.**    **The 2017 Case (No. 4:17cr113)**

In 2017, a Grand Jury indicted Brown in this Division, in Case No. 4:17cr113 ("the 2017 Case"), on one count of conspiracy to possess with intent to distribute heroin (Count One) and five counts of distribution of heroin (Counts Two through Six). (*See* ECF No. 141-1.)

Brown and the Government entered into a plea agreement, whereby Brown agreed to plead guilty to Count One in exchange for dismissal of the remaining counts. (*See* ECF No.

---

[1]     The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the spelling, punctuation and capitalization in quotations from Brown's submissions.

141-2 at ¶¶ 1, 9.) Additionally, the Government agreed that it would "not further criminally prosecute [Brown] in the Eastern District of Virginia for the specific conduct described in the indictment or statement of facts," subject to exceptions for crimes of violence. (*Id.* at ¶ 9.) Of note, the indictment described conduct that allegedly occurred between 2016 and March 2017. (*See* ECF No. 141-1.) The statement of facts similarly described events that occurred beginning "[i]n 2016" and concluding on March 10, 2017. (*See* ECF No. 141-3.) The Court ultimately sentenced Brown to 102 months' imprisonment for Count One. (Case No. 4:17cr113, ECF No. 67.)

### B.     The Present Case (No. 4:20cr40)

On July 8, 2020, a Grand Jury indicted Brown and seven other individuals in the present matter. (ECF No. 3.) The Indictment charged Brown with conspiracy to distribute and possess with intent to distribute heroin, cocaine, cocaine base, MDMA, oxycodone and marijuana, in violation of 21 U.S.C. §§ 846 and 841 (Count One); two counts of distribution of heroin and cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts Four and Five); and two counts of possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts Six and Seven). (*Id.*) Collectively, the counts against Brown described conduct that allegedly occurred between 2013 and 2017. (*See id.*)

Brown's appointed counsel, Gregory William Klein, filed a motion to dismiss Counts One, Four, Six and Seven against Brown, arguing that the Government's prosecution of those charges was barred by Brown's plea agreement in the 2017 Case. (ECF Nos. 140, 141.) The Court held a hearing on Brown's motion to dismiss on February 19, 2021. (*See* ECF No. 178.) During the hearing, the Court deferred ruling on the motion to dismiss and ordered the parties to submit supplemental briefing. (*See* ECF No. 170.) However, the Court advised the parties, that

based upon Brown's 2017 plea agreement, it would likely limit the Government's proof as to Counts One and Four and limit the scope of the charged conduct in Count Six. (*See* ECF No. 178 at 24–26). But the Court stated that Count Seven could proceed untouched, because the events underlying that charge occurred between August 2015 and October 2015, which predated any conduct charged in the 2017 Case. (*Id.* at 6–7, 14, 24, 26; *see* ECF No. 3 at 9.)

Both before and after the February 19, 2021 hearing, the parties engaged in plea negotiations. (*See* ECF No. 333-1, at 3–7; ECF Nos. 316-1 to 316-3.) In a sworn affidavit, Attorney Klein attested that after the motion hearing, the Government offered to let Brown plead guilty to two counts: one drug charge, with a sentence to run concurrently to Brown's sentence in the 2017 Case, and one firearm charge, which carried a mandatory five-year, consecutive sentence. (ECF No. 333-1 at ¶ 17.) On March 18, 2021, Attorney Klein sent a letter to Brown describing the Government's offer, explaining that the offer would require Brown to serve five additional years in prison, and strongly encouraging Brown to accept the offer. (*Id.* at 5, 7.)

Negotiations continued until the Government made a final plea offer that (1) allowed Brown to plead guilty to just one firearm charge and (2) did not require Brown to cooperate with the Government against his co-defendants. (*Id.* at ¶¶ 19–20.) Attorney Klein sent a letter to Brown dated March 31, 2021, describing this final offer and explaining further that the Government had "agreed to include the language that the [five-year sentence for the firearm charge] was considered to have begun running on July 8, 2020." (ECF No. 316-3.) But Attorney Klein cautioned Brown in the same letter: "Please understand that we have no idea as to how the Court will interpret this language. I cannot guarantee that the Court won't add 5 consecutive years to your current sentence." (*Id.*)

3

In addition, Attorney Klein and Brown "spoke about whether there was any way to fight the consecutive nature of the firearm charge." (ECF No. 333-1 at ¶ 21.) Attorney Klein advised that he would "do everything he could to convince the Court it had the authority to order [a non-consecutive] sentence," but that such a result "was highly unlikely given the wording of the statute." (*Id.* at ¶ 22.) Brown decided to accept the Government's final offer to avoid "the very real possibility of spending at least an additional 20 years of his life in prison if he went to trial." (*Id.* at ¶ 23.) Brown was aware of "significant evidence against him including video surveillance, undercover buys, and direct testimony," and he also "knew that many of his coconspirators pled guilty and would likely be willing to testify against him in order to lessen their own sentences." (*Id.* at ¶¶ 24–25.)

On March 31, 2021, Brown and the Government entered into a plea agreement, whereby Brown agreed to plead guilty to Count Seven in exchange for dismissal of the remaining counts. (*See* ECF Nos. 200, 201.) Further, Brown and the Government agreed to request that the Court impose a sentence of five years' imprisonment — the mandatory statutory minimum for a § 924(c) offense — "with said sentence to be considered to have begun running on July 8, 2020." (ECF No. 200 at ¶ 5); *see* 18 U.S.C. § 924(c)(1)(A).

The Court conducted a hearing on April 22, 2021 to accept Brown's guilty plea. (ECF No. 326.) The hearing included an extended discussion of the potential penalties that Brown faced as a consequence of pleading guilty to Count Seven:

> THE COURT: Now, do you understand the maximum punishment for that is life imprisonment, a mandatory minimum of five years consecutive to any other sentence you would receive? I think this would be the only one. But 5-year mandatory minimum, a sentence up to life, a fine of up to $250,000, a term of supervised release of 5 years, and a $100 special assessment. That's the maximum punishment for this offense. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

4

. . .

THE COURT: Now, I asked you about the charge. Have you gone over the case, though, with your lawyer, talked about the facts of the case and whether it's a good idea to go to trial or to plead guilty? Did you do all that?

THE DEFENDANT: Absolutely.

THE COURT: Did you have enough time to talk to him about all that?

THE DEFENDANT: Absolutely.

THE COURT: And was it ultimately your decision to plead guilty here today?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: All right. Now, did Mr. Klein also talk to you about how your sentence is going to be determined under what are known as the sentencing guidelines?

THE DEFENDANT: Yes.

THE COURT: Now, I know he's gone over it with you, but because it plays such an important role in your fate, I thought I would take a few minutes and go over it with you as well. Is that all right with you?

THE DEFENDANT: Yes, sir.

THE COURT: Now, this is a process that if I accept your guilty plea, I'm going to refer your case down to the probation office and I'm going to instruct them that they are to write up what is known as a presentence report. That is a report that is designed to give insight to me about who you are as a human being because you're far more of a person than just what happened here. Am I right about that?

THE DEFENDANT: Absolutely, sir.

. . .

THE COURT: Now, the second part of that report will be a calculation of the sentencing guidelines, an effort by Congress to ensure that folks are treated relatively the same when they have committed the same type of crime and they

5

have the same type of criminal history regardless of whether they're prosecuted here in our beloved city of Newport News or up in D.C. or someplace like that.

And the way they accomplish that is through a glorified chart. On one side, it takes into consideration any criminal history you have. If you've got convictions, points will be affixed to each one of them. They'd be tallied up. A criminal history category would be decided upon. On the other side, an offense level will be decided upon based upon how serious the offense. The more serious the crime, the higher the number. So murder has the highest number. That's the most serious thing you could do is to kill another human being.

But offense level on one side, criminal history on other side, and that comes up with a range. That is the starting point for me to figure out where to sentence you to. I could go higher than that or I could go lower than that, but I would have to have a lawful reason to do so.

Of course, there is a mandatory minimum here of five years in prison, which I would be required to impose on you. Do you understand all that?

THE DEFENDANT: Yes, sir.

THE COURT: And, Mr. Klein, do you believe I've adequately described the sentencing guideline process to your client?

MR. KLEIN: I do, Your Honor.

THE COURT: All right. So I will say this to you, Mr. Brown. I gather that Mr. Klein went over those guidelines with you; is that right?

THE DEFENDANT: Yes.

THE COURT: And it is quite likely and quite appropriate that he has given you a prediction, maybe what his idea of what your guidelines could be, but ultimately -- of course, both he and the government are going to recommend five years to me, but what I want you to know, anything that he's told you or the government has told you, it is a prediction.

THE DEFENDANT: Right.

THE COURT: Not a promise. I'm not bound by that recommendation. I'm going to hear what everybody has to say, and most importantly, as I already told you, I need to hear from you, right, before I make my final decision on what the sentence is. I say that to you because nobody in the world can promise you here, then, today what your sentence is going to be. Since I don't know, nobody else can know it, right?

THE DEFENDANT: Right.

THE COURT: So if Mr. Klein or the government or anybody else has told you what they think your sentence will be, I need you to understand it is a prediction, not a promise. Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: I'm going to ask you, then, has anybody promised you, then, what your sentence will be here?

THE DEFENDANT: No.

THE COURT: All right. Are you satisfied with all the work that Mr. Klein has done for you to this point?

THE DEFENDANT: Absolutely.

THE COURT: Specifically, do you believe he's done everything necessary to allow you to make the important decision about whether or not to plead guilty here today?

THE DEFENDANT: Absolutely.

. . .

THE COURT: Now, you, as I said before, have agreed to plead guilty to Count Seven, possession of a firearm in furtherance of drug trafficking. That provides for that mandatory minimum sentence of 5 years — consecutive to any other sentence — up to life, a fine of up to $250,000, a term of supervised release up to 5 years and a special assessment of $100. Am I right about that?

THE DEFENDANT: Yes, sir.

(ECF No. 326 at 10–17, 23–24.) At the conclusion of the plea colloquy, Brown entered a plea of guilty to Count Seven, and the Court accepted his plea as knowing, voluntary and supported by an adequate factual basis. (*Id.* at 28–29.)

Attorney Klein argued at sentencing for a portion of Brown's sentence to run concurrently to his sentence in the 2017 Case. (*See* ECF No. 247; ECF No. 314 at 4–5). However, the Court determined that § 924(c) required Brown's sentence to run consecutively to

7

his prior sentence. (*See* ECF No. 314, at 6); *see* 18 U.S.C. § 924(c)(1)(D)(ii) (mandating that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person"). The Court therefore imposed a consecutive sentence of five years' imprisonment, the mandatory minimum term under the statute. (ECF No. 314 at 12; ECF No. 255.) The Court agreed to credit Brown for time served, but the Court did not adopt the parties' proposed start date of July 8, 2020, for Brown's § 924(c) sentence, ruling instead that the Bureau of Prisons would make that determination. (ECF No. 314 at 6–7, 12.) The Court entered this judgment on August 30, 2021. (ECF No. 255).

Brown did not directly appeal his conviction or sentence. Instead, in a sworn declaration, Brown avers that he "was in transit in the [Bureau of Prisons] system" before October 2021 and was placed in quarantine in FCI Gilmer between October 4, 2021, and October 28, 2021. (ECF No. 316-5 at ¶ 2.) During that quarantine period, Brown "was not permitted to access any of [his] personal property including [his] legal material"; he was permitted out of his cell only once per day, to access the shower; he was unable to access the facility's law library or his own legal materials, despite requesting such access; and the computer terminals in his housing unit were inoperable. (*Id.* at ¶ 3.)

The Court received Brown's instant § 2255 Motion and an accompanying memorandum on August 1, 2022. (ECF Nos. 316, 317.) The Government filed a response in opposition to the § 2255 Motion (ECF No. 333), and Brown filed a reply (ECF No. 334).

Brown moved to supplement the § 2255 Motion with a pair of amendments. (*See* ECF Nos. 332, 335, 336.) On April 23, 2025, the Court granted Brown's request and accepted Brown's Motion to Amend (ECF No. 332) and Amendment (ECF No. 336) as amendments to his § 2255 Motion. (ECF No. 357.) The Court allowed the Government until May 7, 2025, to

file a supplemental response to the § 2255 Motion in light of Brown's amendments, but the Government did not do so. Accordingly, Brown's § 2255 Motion, as amended, is now ripe for disposition.

Taken together, and construed liberally, Brown's 2255 Motion and its two amendments present the following claims:

> Claim One: Attorney Klein provided ineffective assistance of counsel with regard to Brown's decision to plead guilty to Count Seven. (ECF No. 316 at 6; ECF No. 317 at 1–3, 5–10.)
>
> Claim Two: The Bureau of Prisons deprived Brown of the ability to file a direct appeal. (ECF No. 316 at 7; ECF No. 317 at 3–4, 10–11.)
>
> Claim Three: Brown's conviction in the instant case was precluded by the 2017 plea agreement, based on double jeopardy and/or collateral estoppel. (ECF No. 332 at 7–10; ECF No. 336 at 10–11, 13–14.)
>
> Claim Four: Attorney Klein provided ineffective assistance of counsel by failing to advise Brown about the double jeopardy/collateral estoppel issue before Brown chose to plead guilty. (ECF No. 332 at 10–11.)
>
> Claim Five: Attorney Klein provided ineffective assistance of counsel by failing to raise the double jeopardy/collateral estoppel issue before the District Court. (ECF No. 336 at 11–15.)
>
> Claim Six: Attorney Klein provided ineffective assistance of counsel by failing to file a direct appeal raising the double jeopardy/collateral estoppel issue. (ECF No. 332 at 11.)

## II.   ANALYSIS

### A.   Claim One (Ineffective Assistance as to Guilty Plea)

First, Brown claims that Attorney Klein misled him into pleading guilty to Count Seven by providing "false information," specifically an alleged assurance "that the new sentence would not lengthen the aggregate amount of time in prison." (ECF No. 316 at 6; ECF No. 317 at 1–3, 5–10.)

To demonstrate constitutionally ineffective assistance of counsel, a convicted defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*; *see* U.S. Const. amend. VI. Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To show *Strickland* prejudice in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

At the outset, the Court notes that it advised Brown, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his right "to file a reply opposing the response of the United States that includes counter-affidavits, statements, exhibits or other legal or factual material that supports his position in the case." (ECF No. 325, at 1.) Although Brown submitted a reply to the Government's response to the § 2255 Motion, Brown's reply (ECF No. 334) does not include affidavits, verified statements, or any other evidence controverting the sworn testimony in Attorney Klein's affidavit (ECF No. 333-1). Consequently, Attorney Klein's description of

events leading to Brown's decision to plead guilty to Count Seven, summarized above, is uncontroverted as a factual matter for purposes of resolving the § 2255 Motion.

The unchallenged facts established by Attorney Klein's affidavit, coupled with Brown's representations to the Court during his plea colloquy, render Brown's ineffectiveness claim devoid of factual support. Furthermore, "[a]bsent clear and convincing evidence to the contrary, a [criminal] defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992). "It is indeed the case that 'sworn statements made during a Rule 11 colloquy' bind a petitioner, in that a district court generally should dismiss, without an evidentiary hearing, a § 2255 petition that 'necessarily relies on allegations that contradict [those] sworn statements.'" *United States v. McNeil*, 126 F.4th 935, 946 (4th Cir. 2025) (alteration in original) (quoting *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005)).

During his plea colloquy, Brown unequivocally and repeatedly stated under oath that he knew the Court would impose a mandatory, consecutive sentence of five years' imprisonment if he pleaded guilty to Count Seven. (ECF No. 326 at 10, 15, 23–24.) Brown also confirmed under oath that he had received no promises or guarantees as to what sentence the Court would ultimately impose. (*Id.* at 15–16, 22–23.) In fact, Brown acknowledged that the Court could even order a sentence of life imprisonment. (*Id.* at 10, 23–24.) Brown further professed under oath that he was satisfied in all respects with Attorney Klein's representation of him. (*Id.* at 16–17.) Brown's denial, under oath, that he received any promises about his sentence is further supported by Attorney Klein's affidavit and, in particular, by Attorney Klein's March 31, 2021 letter to Brown. (*See* ECF No. 316-3, at 1 ("I cannot guarantee that the Court won't add 5 consecutive years to your current sentence.").)

11

Conversely, there exists no evidence on the record, let alone evidence that is clear and convincing, of any guarantee from Attorney Klein that the Court would give Brown a concurrent sentence for Count Seven. As a result, Brown cannot now be heard to contradict the earlier statements that he made under oath. *See Fields*, 956 F.2d at 1299 ("Absent clear and convincing evidence to the contrary, a [criminal] defendant is bound by the representations he makes under oath during a plea colloquy.") Finally, given the evidence that the Government was likely to present at trial, the Court finds no reasonable probability that, absent any error that Attorney Klein might possibly have committed, Brown would have proceeded to trial. (*See* ECF No. 333-1 at ¶¶ 23–26.)

For all of these reasons, the Court finds that Brown's ineffectiveness claim regarding his guilty plea is subject to dismissal without an evidentiary hearing. *McNeil*, 126 F.4th at 946.

**B.    Claim Two (Inability to File Appeal)**

Next, Brown claims that the Bureau of Prisons thwarted his ability to appeal his conviction in this matter by placing him in quarantine without access to a law library or his legal materials. (ECF No. 316 at 7; ECF No. 317 at 3–4, 10–11.) Brown argues that these events constitute a violation of his right to due process under the Fifth Amendment. (ECF No. 316 at 7).

The evidence before the Court falls short of showing that Brown stood unable to file a timely notice of appeal. The Court entered its judgment on August 30, 2021 (ECF No. 255), and Brown had 14 days from that date (i.e. until September 13, 2021) to note an appeal. Fed. R. App. P. 4(b)(1)(A)(i). Brown also could have moved for an extension of time of up to 30 additional days. Fed. R. App. P. 4(b)(4).

Brown's sworn declaration is the only evidence in the record regarding the actions of the Bureau of Prisons. (*See* ECF No. 316-5.) The declaration details the conditions of Brown's quarantine between October 4 and October 28, 2021. (*Id.* at ¶¶ 2–3.) But Brown's declaration fails to mention any restrictions on his activities during the 14-day appeal period between August 30 and September 13, 2021—or, indeed, during any time period before October 4, 2021. (*Id.*) Brown's declaration contains only a vague statement that he was "in transit" "[p]rior to October 2021." (*Id.* at ¶ 2.)[2]

As a result, this evidence, taken together, proves insufficient to support a reasonable conclusion that the Bureau of Prisons prevented Brown from filing a notice of appeal. Therefore, no genuine issue of fact exists as to Brown's due process claim.

C.   **Claim Three (Double Jeopardy/Collateral Estoppel)**

The core contention of Brown's double jeopardy/collateral estoppel claim is, in essence, that the Government's prosecution of him in the instant case was barred by the plea agreement that he signed in the 2017 Case. (*See* ECF No. 332 at 7–10; ECF No. 336 at 10–11, 13–14.)

"In interpreting plea agreements, [courts] draw upon contract law as a guide to ensure that each party receives the benefit of the bargain." *United States v. Jordan*, 509 F.3d 191, 195 (4th Cir. 2007). Here, the pertinent language in Brown's 2017 plea agreement stands plain and

---

[2]   The Court notes that an unsworn statement in Brown's § 2255 filings claims that he was transported "[i]mmediately after sentencing" to a holdover facility where he was deprived of his legal materials and access to a law library for "the next four weeks." (ECF No. 317 at 3–4.) Because this statement was not verified, sworn, or affirmed to be true under penalty of perjury, it is not evidence, and the Court does not treat it as such. But even if Brown had included that statement in his sworn declaration, it still would fail to explain why Brown (1) was prevented from mailing a simple letter to the Court to note a timely appeal, (2) did not ask Attorney Klein to note an appeal on his behalf at the conclusion of the sentencing hearing, or (3) was prevented from communicating with Attorney Klein, and making the same request, while at the holdover facility.

13

unambiguous. Subject to exceptions for crimes of violence, which prove irrelevant here, the Government agreed that it would "not further criminally prosecute the defendant in the Eastern District of Virginia for the specific conduct described in the indictment or statement of facts." (ECF No. 141-2 at ¶ 9.) As discussed above, both the indictment and the statement of facts in the 2017 Case described conduct that spanned a period of time between 2016 and March 2017. (*See* ECF Nos. 141-1, 141-3.) But here, Count Seven — the only charge of which Brown was convicted — concerns events that occurred between August 2015 and October 2015. (ECF No. 3 at 9.) Because all such behavior occurred before 2016, no overlap exists between Count Seven and the timeframe covered by the 2017 plea agreement.[3] Accordingly, the subject matter of Count Seven fails to fall within "the specific conduct described in the indictment or statement of facts" of the 2017 Case.

Simply put, the 2017 plea agreement did not prohibit the Government from prosecuting Brown for conduct he committed in 2015. Thus, the Government's prosecution of Count Seven did not contravene the 2017 plea agreement. As a result, Brown's claim stands meritless as a matter of law.

### D. Claims Four, Five, and Six (Ineffective Assistance as to Double Jeopardy/ Collateral Estoppel)

Lastly, Brown argues that Attorney Klein rendered ineffective assistance by failing to advise Brown about the double jeopardy/collateral estoppel issue before Brown's guilty plea, and

---

[3] Certain other counts against Brown in the instant case did overlap, in part, with the timeframe and subject matter covered by the 2017 plea agreement (*see* ECF No. 178 at 24–26), but all such counts were dismissed pursuant to the 2021 plea agreement. (ECF No. 200 at ¶ 10; ECF No. 255 at 1.)

rendered further ineffective assistance by failing to raise the same issue before this Court[4] and in an appeal. (ECF No. 332 at 10–11; ECF No. 336 at 10–15.)

Each of Brown's ineffectiveness claims fail, because Brown's double jeopardy/collateral estoppel argument itself proves meritless. "[T]here can be no claim of ineffective assistance where . . . counsel is alleged to have failed to raise a meritless argument. Failure to raise a meritless argument can never amount to ineffective assistance." *Moore v. United States*, 934 F. Supp. 724, 731 (E.D. Va. 1996).[5] As this Court observed during the February 19, 2021 hearing on Brown's motion to dismiss, Count Seven stood unaffected by the 2017 plea agreement. (*See* ECF No. 178 at 6–7, 14, 24, 26.) Thus, Brown cannot show that a different course of action by Attorney Klein on this subject would have produced any "reasonable probability" of a different outcome. *See Strickland*, 466 U.S. at 694.

### E. Certificate of Appealability

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted).

---

[4] As discussed *supra*, Attorney Klein moved for the dismissal of several counts, including Count Seven, on the basis of the 2017 plea agreement. (ECF No. 141.) It is unclear from Brown's filings what other actions that he believes Attorney Klein should have taken in support of that argument.

[5] An exception to this general rule arises where an attorney "disregards specific instructions from the defendant to file a notice of appeal," for in that circumstance, a court will presume prejudice "with no further showing from the defendant of the merits of his underlying claims." *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 484 (2000). But here, even liberally construed, Brown's § 2255 filings fail to allege that he *told* Attorney Klein to file a notice of appeal. Rather, Brown merely suggests that Attorney Klein should have noted an appeal, apparently of his own volition. (*See* ECF No. 332 at 11.)

Here, the Court finds that the issues presented in Brown's § 2255 Motion are not reasonably debatable. As a result, the Court declines to issue a certificate of appealability.

### III. CONCLUSION

For the reasons set forth above, the Court will hereby DENY Brown's § 2255 Motion (ECF No. 316), as amended by Brown's Motion to Amend (ECF No. 332) and Amendment (ECF No. 336). Accordingly, the Court will hereby DISMISS this action. Furthermore, the Court will hereby DENY a certificate of appealability.

An appropriate Final Order shall issue.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Brown.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: July 7, 2025